UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.A.,<br><br>                               Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,<br><br>                              Respondents. | Case No.: 3:25-cv-03028-RBM-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Doc. 1]** |

      Pending before the Court is Petitioner N.A.'s ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 challenging the lawfulness of his detention by the United States Department of Homeland Security ("DHS"). (Doc. 1.) For the reasons below, the Petition is **GRANTED IN PART and DENIED IN PART**.

### I.    BACKGROUND

**A.    Factual Background**

      Petitioner is a 24-year-old citizen and national of Guatemala. (Doc. 1 ¶ 48.)[1] He entered the United States on June 1, 2008 without being admitted, paroled, or inspected.

---

[1] The Court cites the paragraph numbers of the Petition, and the CM/ECF electronic pagination for all other filings, unless otherwise noted.

(Doc. 7-2 at 2.) On or about June 16, 2017, in Los Angeles, California, Petitioner was assaulted and significantly injured by a suspect with a detachable drill. (Doc. 1 ¶ 49.) Petitioner provided a statement to the police in connection with the assault, and Petitioner's aggressor was arrested for assault with a deadly weapon. (*See id.* ¶¶ 49–50.) On December 2, 2019, Petitioner filed his Form I-918, Petition for U Nonimmigrant Status ("U-visa").[2] (Doc. 7-2 at 6.) Finding Petitioner's U-visa petition "bona fide,"[3] United States Citizenship and Immigration Services ("USCIS") granted Petitioner employment authorization and deferred action on December 15, 2023. (Doc. 7-2 at 6–7.)

United States Immigration and Customs Enforcement ("ICE") arrested Petitioner "during an at-large enforcement operation" in Los Angeles on June 18, 2025, and transferred him to ICE custody in San Diego for processing. (*Id.* at 3.) DHS commenced removal proceedings against Petitioner on June 23, 2025, alleging that Petitioner was subject to removal under Immigration and Nationality Act § 212(a)(6)(A)(i) as a noncitizen

---

[2] A U-visa provides temporary legal status to victims of qualifying criminal activity who have suffered substantial physical or mental abuse and who cooperate with law enforcement in investigating or prosecuting those crimes. *See* 8 U.S.C. § 1101(a)(15)(U); 8 U.S.C. § 1184(p); 8 C.F.R. § 241.14(b). The filing of a U-visa petition "has no effect on the authority of [ICE] to execute a final order" of removal, but a petitioner who is subject to a final order may seek a stay of removal pending the completion of the U-visa process. 8 C.F.R. § 241.14(c)(1)(ii). The number of U-visas available is statutorily capped at 10,000 per year. 8 U.S.C. § 1184(p)(2).

[3] Because the number of U-visa petitions filed each year exceeds the statutory cap, petitioners typically must wait several years before receiving their U-visas. *See* 8 C.F.R. § 241.14(d)(2). In 2021, USCIS implemented a "Bona Fide Determination" ("BFD") policy that allows U-visa petitioners to receive benefits while they wait for U-visas to become available. During this process, USCIS determines whether a pending U-visa petition is "bona fide," or "made in good faith; without fraud or deceit." USCIS, Policy Manual, Vol. 3, Part C, Ch. 5, Bona Fide Determination Process, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5. If so, USCIS may exercise its discretion to grant the U-visa petitioner a Bona Fide Determination Employment Authorization Document ("BFD EAD") and deferred action. *Id.*

present in the United States who had not been admitted or paroled. (Doc. 1 ¶ 53.) On October 17, 2025, USCIS issued Petitioner an Intent to Deny his pending U-visa petition because "[a]dditional evidence is required to continue the processing of [his] petition." (Doc. 7-2 at 6–7.) Petitioner timely submitted a Response to the Notice of Intent to Deny to USCIS (*see* Doc. 8 at 14–40), and his U-visa petition is still pending.

**B.    Procedural Background**

On November 7, 2025, Petitioner filed the Petition against Christopher LaRose, Patrick Divver, Todd Lyons, and Kristi Noem (collectively, "Respondents"). (Doc. 1.) On November 10, 2025, the Court ordered Respondents to show cause why the Petition should not be granted by filing a written response. (Doc. 2 at 1–2.) On November 19, 2025, Respondents filed their Return to Habeas Petition ("Response"). (Doc. 7.) On November 24, 2025, Petitioner filed his Traverse in Support of Habeas Corpus ("Reply"). (Doc. 8.)

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.    DISCUSSION

Petitioner argues that his detention unlawfully violates the Fifth Amendment's Due Process Clause, the Fourth Amendment,[4] and the Administrative Procedure Act ("APA").

---

[4] Courts in this district have rejected similar Fourth Amendment arguments in the habeas context. *See Velasquez v. LaRose*, Case No.: 25-CV-3137 JLS (MSB), 2025 WL 3251373,

(Doc. 1 ¶¶ 56–100.) He "seeks declaratory and injunctive relief to compel his immediate release from the immigration jail where he has been held by DHS since being unlawfully detained on June 15, 2025, without first being provided a due process hearing to determine whether his incarceration is justified." (*Id.* ¶ 10.) Respondents argue that: (1) Petitioner's claims are jurisdictionally barred under 8 U.S.C. § 1252(g) and § 1252(b)(9); (2) "a grant of deferred action does not prevent DHS from placing Petitioner in removal proceedings, detaining him, or terminating the deferred action;" and (3) Petitioner's detention is lawful under the mandatory detention procedures of 8 U.S.C. § 1225. (Doc. 7 at 3–12.)

**A.   Jurisdiction**

At the outset, the Court agrees with Respondents that "Petitioner's proceedings have not been terminated, he was not previously released from custody, and he has not been placed into expedited removal proceedings." (Doc. 7 at 13.) Therefore, the Court does not have jurisdiction over Petitioner's claims regarding termination of removal proceedings, re-detention without notice, or expedited removal proceedings. *See SEC v. Med. Comm. for Human Rights*, 404 U.S. 403, 407 (1972) (noting it is "well settled that federal courts may act only in the context of a justiciable case or controversy") (citation omitted).

Additionally, under 8 U.S.C. § 1252(g), the Court may not exercise jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C § 1252(g). The Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471,

---

at *4 (S.D. Cal. Nov. 21, 2025) (holding the petitioner "has not met his burden in proving that . . . release is the remedy for the alleged Fourth Amendment violations") (citing *United States v. Crews*, 445 U.S. 463, 474 (1980)); *Aredondo v. Lyons*, Case No. 2:25-cv-01838-TMC, 2025 WL 3436812, at *4 (W.D. Wash. Oct. 15, 2025) (holding the petitioner had not "proven an entitlement to habeas relief based on his Fourth Amendment claim"). This Court similarly concludes that Petitioner has not shown he is entitled to release because of alleged Fourth Amendment violations.

482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

Petitioner "requests that their removal proceedings be dismissed without prejudice," and that he be allowed "to pursue his application for a U visa and related relief, with USCIS conserving judicial resources and providing [Petitioner] with an opportunity to fairly present their case before a trained professional, equipped and authorized for such adjudication." (Doc. 8 at 7.) Petitioner has pointed to no authority indicating that this Court may dismiss his removal proceedings, nor could he in light of § 1252(g). And to the extent Petitioner requests an order staying his removal proceedings pending adjudication of his U-visa petition, several courts in the Ninth Circuit have held such claims similarly barred. *Velasco Gomez v. Scott*, CASE NO. C25-0522 JLR-BAT, 2025 WL 1726465, at *4 (W.D. Wash. June 20, 2025) (collecting cases); *see Velarde-Flores v. Whitaker*, 750 F. App'x 606, 607 (9th Cir. 2019) (unpublished) ("The decision whether to remove aliens subject to valid removal orders who have applied for U-visas is entirely within the Attorney General's discretion," so petitions to halt "the government's decision to execute valid orders of removal . . . fall[] within the statutory jurisdictional bar."). Accordingly, the Court does not have jurisdiction over these claims.

The Court does, however, have jurisdiction over Petitioner's other claims. Aside from the claims above, Petitioner does not challenge the decision to commence removal proceedings or any act to execute a removal order. Rather, he challenges his detention without "a due process hearing to determine whether his incarceration is justified." (Doc. 1 ¶ 10.) He is thus enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, Case No.: 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025) (emphasis in original); *United States v. Hovespian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (noting a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority"). Therefore, § 1252(g) does not strip the Court of jurisdiction over

these claims. Below, the Court discusses only those claims over which it has jurisdiction.

Respondents argue that Petitioner's claims "arise from his detention during removal proceedings, which stem from the Attorney General's decision to commence such proceedings." (Doc. 7 at 4.) This interpretation of 8 U.S.C. § 1252(g) would "eliminate judicial review of immigration [detainees'] claims of unlawful detention . . . inconsistent with *Jennings v. Rodriguez* and the history of judicial review of the detention of noncitizens under 28 U.S.C. § 2241." *Sanchez v. LaRose*, Case No.: 25-cv-2396-JES-MMP, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)); *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022)). Accordingly, as other courts have found in similar cases, the Court has jurisdiction to hear Petitioner's claims that his detention is unlawful under 28 U.S.C. § 2241. *See Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 909 (W.D. Wash. 2025) (holding the petitioner's claims "do not 'arise from' ICE's decision to execute his removal order," but "from the Government's decision to grant him deferred action combined with ICE's subsequent refusal to honor that grant"); *Sanchez*, 2025 WL 2770629, at *2.

Respondents also argue that 8 U.S.C. § 1252(b)(9) bars judicial review of Petitioner's claims because Petitioner is challenging the basis upon which he is detained, and the exclusive means of judicial review of such claims is a petition for review to a court of appeals. (Doc. 7 at 4–5 (citing *Reno*, 525 U.S. at 483).) Section 1252(b)(9) provides that judicial review of "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."

Section 1252(b)(9) was "intended to 'channel judicial review over final orders of removal to the courts of appeals,' not 'foreclose *all* judicial review of agency actions' touching on deportation proceedings writ large." *Salvador v. Bondi*, Case No. 2:25-cv-07946-MRA-MAA, 2025 WL 2995055, at *4 (C.D. Cal. Sept. 2, 2025) (quoting *J.E.F.M.*

1  *v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original)).  The Supreme Court
2  has "explained that practically any question of fact or law related to immigration detention
3  technically 'aris[es] from' actions taken to remove a noncitizen 'in the sense that the
4  [noncitizen's] injuries would never have occurred if they had not been placed in
5  detention.'"  *Salvador*, 2025 WL 2995055, at *4 (quoting *Jennings*, 583 U.S. at 293).  But
6  "cramming judicial review of those questions into the review of final removal orders would
7  be absurd."  *Jennings*, 583 U.S. at 293.  In rejecting such an expansive interpretation of
8  § 1252(b)(9), the *Jennings* court reasoned:

> Interpreting 'arising from' in this extreme way would . . . make claims of [unlawful] detention effectively unreviewable.  By the time a final order of removal was eventually entered, the allegedly [unlawful] detention would have already taken place.  And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

*Id.*

   This logic applies equally here.  As discussed above, Petitioner challenges the legality of his continued detention rather than a final order of removal.  Accordingly, the Court finds that § 1252(b)(9) does not strip this Court of jurisdiction.  *See Salvador*, 2025 WL 2995055, at *5 (rejecting similar argument under § 1252(b)(9)); *Noori v. Larose*, Case No.: 25-cv-1824-GPC-MSB, 2025 WL 2800149, at 7 (S.D. Cal. Oct. 1, 2025) (same).

**B.      Mandatory or Discretionary Detention**

   The statutory provision governing Petitioner's detention determines what procedures Respondents must follow.  Under 8 U.S.C. § 1225(b)(2), noncitizens are subject to mandatory detention without eligibility for bond.  "Under § 1226(a), noncitizens are entitled to a bond hearing before an immigration judge to determine whether they pose a flight risk or danger to the community."  *Ledesma Gonzalez v. Bostock*, CASE NO. 2:25-cv-01404-JNW-GJL, 2025 WL 2481574, at *2 (W.D. Wash. Oct. 7, 2025); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) (holding that "§ 1226(a) must be construed as *requiring* the Attorney General to provide the [noncitizen]

with such a hearing"), *abrogation on other grounds recognized by Avilez v. Garland*, 69 F.4th 525, 535 (9th Cir. 2023) (emphasis in original). For the reasons set forth below, the Court finds that Petitioner is subject to the procedures set forth in § 1226(a).

### 1. Mandatory Detention Under § 1225

Section 1225 applies to noncitizens who are "applicants for admission." An applicant for admission is a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)). All applicants for admission "shall be inspected by immigration officers" to assess whether they may be admitted. 8 U.S.C. § 1225(a)(3). "[I]f the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained." § 1225(b)(2)(A). Other than for a limited exception under 8 U.S.C. § 1182(d)(5)(A) for parole "for urgent humanitarian reasons or significant public benefit," which is not implicated here, detention under § 1225(b)(2) is mandatory. *Sequen v. Albarran*, — F. Supp. 3d —, 2025 WL 2935630, at *1 (N.D. Cal. Oct. 15, 2025) (noting that "noncitizens subject to 1225(b)(2) . . . are subject to mandatory detention while their full removal proceedings are pending") (internal citation omitted).

### 2. Discretionary Detention Under § 1226

Section 1226 applies to noncitizens who are "detained pending a decision on whether the [noncitizen] is to be removed from the United States." Section 1226 affords the government significant discretion; so long as the detained noncitizen is not covered by § 1226(c)—which requires mandatory detention for noncitizens who have been charged with certain crimes—the Attorney General may release the noncitizen on "bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2). Such release is proper where the noncitizen "satisfies [the government] that [he] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(a)(4). If a noncitizen wishes to contest the initial custody determination, the denial, or the amount of bond, he has a right to do so before an immigration judge. 8 C.F.R. § 1236.1(d)(1).

### 3. Petitioner is Subject to § 1226

The Court finds that § 1226 governs because "a proper understanding of the relevant statutes, in light of their plain text, overall structure, and . . . case law interpreting them, compels the conclusion that § 1225's provisions for mandatory detention of noncitizens 'seeking admission' [do] not apply to someone like [Petitioner]," who has been residing in the United States for 17 years. *See Lopez Benitez v. Francis*, — F. Supp. 3d —, 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025).

The statutory text—and its interpretation by the great weight of district courts to have considered it[5]—establishes that Petitioner was detained under § 1226. Section 1225(b)(2)(A) states: "in the case of [a noncitizen] who is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding under section 1229a of this title." Thus, for § 1225(b)(2)(A) to apply, a noncitizen must be: "(1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025).

The *Rodriguez* court extensively analyzed which statute governs noncitizens in circumstances like Petitioner's. 2025 WL 2782499, at *16–24. It held that noncitizens who entered the United States without inspection but have been "residing in the United States" and were "not apprehended upon arrival" are governed by § 1226's discretionary

---

[5] *See Quispe v. Crawford*, Civil Action No. 1:25-cv-1471-AJT-LRV, 2025 WL 2783799, at *6 (E.D. Va. Sept. 29, 2025) ("Petitioner's detention is governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures, as at least thirty federal district courts around the country . . . have concluded when faced with habeas petitions from comparably situated petitioners."); *Rodriguez v. Bostock*, — F. Supp. 3d. —, 2025 WL 2782499, at *1 n.3 (W.D. Wash. Sept. 30, 2025) ("conclud[ing] that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice" and collecting over 20 cases).

detention procedures.  *Id.* at 16–17, 19, 21.  The court reasoned that § 1225(b)(2) requires that the noncitizen be "seeking admission," language that "necessarily implies some sort of present-tense action."  *Id.* at 22 (citing *Al Otro Lado v. Wolf*, 952 F.3d 999, 1011 (9th Cir. 2020) (finding that the phrase "*arriving* in the United States" and its "use of the present progressive, like use of the present participle . . . denotes an ongoing process") (emphasis in original).

This Court finds the reasoning in *Rodriguez* persuasive and adopts it here.  Petitioner had been residing in the United States for 17 years at the time of his arrest.  (*See* Doc. 7-2 at 2–3.)  He was not apprehended upon arrival or at the border; rather, he was arrested "during an at-large enforcement operation."  (*Id.* at 3.)  Therefore, he was not "seeking admission" at that time, and his detention falls under § 1226's discretionary detention procedures.  *See Calel v. LaRose*, Case No.: 3:25-cv-02883-GPC-JLB, 2025 WL 3171898, at *4–6 (S.D. Cal. Nov. 13, 2025) (concluding the same for a petitioner who had been residing in the United States for 18 years and was "currently pursuing a U-visa with USCIS"); *Ramirez v. Noem*, Case No. 2:25-cv-02136-RFB-MDC, 2025 WL 3270137, at *3–8 (D. Nev. Nov. 24, 2025) (concluding the same for a petitioner who had been residing in the United States for over a decade and had been "granted deferred action from removal after [USCIS] found his U-Visa application was *bona fide*"); *see also Martinez*, 792 F. Supp. 3d at 223 (concluding that because the petitioner had already been residing in the United States for years when she was detained, "Section 1225(b)(2)(A) . . . simply had no application to her case").

**C.  Due Process**

Because Petitioner's detention is governed by § 1226, his arrest and detention without a meaningful bond hearing violate the Due Process Clause.  The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693.  To determine which procedures are

constitutionally sufficient to satisfy the Due Process Clause, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Court must consider: (1) "the private interest that will be affected by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

All three factors support a finding that Petitioner's detention without an opportunity to be heard deprived Petitioner of his due process rights. First, Petitioner's interest in being free from imprisonment "is the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529; *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).

"Second, the risk of an erroneous deprivation of such interest is high" because Petitioner was detained without receiving "an opportunity to be heard." *Gonzalez Salazar v. Casey*, Case No.: 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025); *see also Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (finding where, as here, Petitioner "has not received any bond or custody redetermination hearing," the "risk of an erroneous deprivation of liberty is high"). Furthermore, the "additional procedures in this case would simply be a recognition of, and respect for, existing procedures under § 1226(a), which include an individualized custody redetermination by an immigration judge, *i.e.*, a bond hearing." *Ramirez*, 2025 WL 3270137, at 10. "These procedures substantially mitigate the risk of erroneous deprivation of [Petitioner's] liberty, because they require the government to establish that [Petitioner] present[s] a flight risk or danger to the community

to continue [his] detention for the pendency of removal proceedings." *Id.*

Third, Respondents' interest in detaining Petitioner without a hearing is low. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); *Pinchi*, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."). Therefore, the Court concludes that due process requires Petitioner to receive a bond hearing under § 1226. In light of the disposition herein, the Court declines to address Petitioner's remaining grounds for relief.

## IV. CONCLUSION

For the foregoing reasons, the Petition (Doc. 1) is **GRANTED**. Accordingly:

1. The Court **ORDERS** that a new individualized bond hearing be held for Petitioner before an immigration judge pursuant to 8 U.S.C. § 1226(a) within fourteen (14) days of this Order. Respondents shall bear the burden of establishing, by clear and convincing evidence,[6] that Petitioner poses a danger to the community or a risk of flight.[7]

---

[6] *See Sadeqi v. LaRose*, — F. Supp. 3d —, 2025 WL 3154520, at *4 (S.D. Cal. Nov. 12, 2025) ("Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents must justify her continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released.") (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings*, 583 U.S. 281 (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond").

[7] This relief has been granted in similar matters. *See Ramirez*, 2025 WL 3270137, at *13; *Larios v. Albarran*, Case No. 25-cv-08799-AMO, 2025 WL 3043391, at *10 (N.D. Cal. Oct. 31, 2025); *Duong v. Kaiser*, — F. Supp. 3d —, 2025 WL 2689266, at *7–10 (N.D. Cal. Sept. 19, 2025).

2. To the extent that Petitioner requests to be immediately released from custody without a bond hearing, the Petition is **DENIED**.

3. To the extent that Petitioner requests dismissal or a stay of his removal proceedings, the Petition is **DENIED**.

**IT IS SO ORDERED**.

DATE: December 8, 2025

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE